320-0031, people of the state of Illinois, Appali versus Cameron T. Taylor, appellant. Ms. Sostock, you may proceed. May it please the court, counsel. My name is Erin Sostock from the office of the state appellate defender for appellant Cameron Taylor. For this argument, I plan to focus on issue one, but I'm happy to answer any questions your honors may have about issue two. Cameron Taylor's trial counsel and appellate counsel were arguably ineffective. First, trial counsel failed to challenge the suggestive identification that the state used as evidence against Taylor at trial to convict him. Then, appellate counsel failed to raise trial counsel's ineffectiveness on appeal. Here, the identifications that were made by all four likelihood of irreparable misidentification. There were a number of reasons that these identifications made in this case were unnecessarily suggestive, such that these identifications were unreliable. To begin with Rebecca Hoover, Rebecca Hoover prior to the ID was informed by police that they had the guy in custody, a fact in itself which is suggestive. Hoover was then asked to look at Taylor in a one-man show-up, which courts have long recognized as an inherently suggestible procedure. Though Hoover originally named Newby as the shooter, she then changed her mind after viewing Taylor in this suggestible one-man show-up and knowing that he was the guy in custody. The fact that Taylor changed her mind about the offender only after this show-up confirms the identification. Even during the ID, Taylor said at trial that she barely looked at, sorry, Hoover said that she barely looked at Taylor's face during the show-up ID. Even her identification was, she didn't even have very much opportunity to view during the actual show-up identification. Moreover, prior to the ID, Hoover testified that she, Hoover told police that she didn't know what the offender was wearing. Then after viewing Taylor in a show-up while he was wearing a blue hoodie, she claimed at trial that she knew the offender was wearing a blue hoodie. Similarly, after the show-up, Hoover testified that it registered with my brain that it could not have been Newby because he didn't have twists in his hair. Again, demonstrating that Hoover's mind about who the offender was changed only after she viewed Taylor in this one-man show-up. Hoover's story drastically changed after the show-up. She first didn't know what the offender was wearing, then he was wearing a blue hoodie. First, she didn't, she never explained his hairstyle and then after the show-up, she said he had twists in his hair. Before the show-up, she said the offender was Newby. After the show-up, Hoover testified that it couldn't have been Newby because I saw him and that's not Newby. That's what she told the detective during her interview. This entire procedure was also totally unnecessary. There was no exigency whatsoever. Police already had Taylor in custody and they had already had three civilians at Aquinas Academy view Taylor in a show-up and then they brought him back to the police station to book him. Taylor was also at the police, sorry, Hoover was also at the police station. There was no reason that Hoover could not be shown a photo line-up or an in-person line-up of actual other people so that she could accurately identify the offender in a fair and unsuggestible method. Counsel, I have a question, maybe a little off the wall, but let's say she's an unreliable witness. We have three others, don't we? We do and I'm about to get to those as well. The three other witnesses were also extremely unreliable. All of them viewed Taylor in a one-man show-up procedure where he was brought to the school with police officers in a marked car and he was wearing handcuffs. This entire procedure in itself is suggestive. However, what's actually more troubling about these other three witnesses is the fact that they actually only identified a royal blue hoodie, not a person. All three of these civilian witnesses from Aquinas Academy, none of them viewed the offender's face. They were all very frank about that and honest. They, at trial, were unable to identify Taylor as the offender. They were unable to identify his face immediately after the offense. In essence, their IDs were just of a blue hoodie, not a human being. Let's take them out of the picture. What do we have left for a prosecution? As far as just general evidence against Mr. Taylor, there's circumstantial evidence that he possessed the firearm that was used in the offense. However, here we're talking about a post-conviction petition that argues that both trial and appellate counsel were ineffective for failing to make a motion to suppress these identifications. At a motion to suppress, the other evidence is not relevant. The only relevant question at a motion to suppress was whether these identifications were so inherently unreliable as to be untrustworthy and should have been not admitted at trial. Prior to trial, this motion should have been made because every single one of these identifications were inherently unreliable for a number of reasons. If that motion had been made prior to trial, then the prosecution, yes, would have had a very different case. They did still have some evidence against Mr. Taylor, but their evidence, this was an ID case, and their evidence against Mr. Taylor was heavily connected to these four so-called identifications of him during the show-offs. Additionally, with the Aquinas Academy offenders, sorry, the witnesses, their idea of this blue sweatshirt, a blue sweatshirt is a really very, very common item of clothing. In Illinois, some of the most having someone wear blue is also one of the most popular colors of clothing. A blue hoodie in itself is just not unique enough to be able to tell us for sure that this was an identification of Taylor. It may have been enough to take him back to the police station, but it was not an actual identification. That is how the state presented it all throughout trial to the jury. The state hammered it into the jury by bringing each of these three Aquinas witnesses on the stand, asked them if they were able to ID the suspect, Mr. Taylor, during the show-up. All of them were testified, yes, we sat at the show-up, that that was the guy, but we didn't identify him by the face. Then the state brings in a detective. I didn't hear that last saying, but we what? We could not identify him by his face. Every single one of those witnesses was extremely clear. Not only could they not identify him by his face, they didn't give any other descriptive features besides the fact that his hood was up. They couldn't tell us about his hair, his height. They didn't even tell us about his general stature. They couldn't tell us what color information other than this blue hoodie. It would be very disturbing to say that a person could be identified as an offender just because of the one item of generic clothing that they were wearing. The state then, after having each of these witnesses testify about the show-up, they then had a detective testify that each of these witnesses made a so-called identification of Taylor. However, none of them identified Taylor by face or features or anything about him besides his clothing. They didn't identify Taylor. They identified the blue sweatshirt. Given all of these facts, there was no reasonable reason for Taylor's trial counsel to fail to file unreliable identifications at trial. Counsel should have moved to suppress, particularly where the trial strategy was to discredit these witnesses during trial. Trial counsel spent a lot of time trying to show the holes in the witnesses' identifications. However, it would have been much more effective and it was completely unreasonable to not just file a suppress and ask and instruct the court that these are actually so unreliable that they are going to taint this trial. Given the number of facts, it was at least arguable for appellate counsel to be ineffective for not raising this issue on appeal that trial counsel was ineffective. And given the number of facts compounded to make these identifications unreliable, Taylor has pled the gist of a constitutional claim in his post-conviction petition and this matter should be remanded for second stage proceedings, including the appointment of counsel. Thank you, and I'll reserve a few minutes for rebuttal. You will have time and reply. Okay, counsel. Mr. Gennadievic, you may respond. Thank you, Your Honors. May it please the clerk, counsel, Gary Gennadievic from the State's Attorney's and Public Prosecutor's Office on behalf of the people of the state of Illinois. Is this just an ID case? I think it's an ID case that is entwined with harmless error, if you will. Okay. Summary dismissal here was proper. Defendant did not plead an arguable constitutional claim at all. The waterfall effect of appellate counsel being ineffective for not raising the ineffectiveness of trial counsel, I'm well aware the court is very well versed in the principles that deal with Strickland and how they apply to appellate counsel and to trial counsel. So I will kind of skip over that and kind of go into what I think is really the heart of this. And when we talk about show-ups, there are three third district appellate court cases pretty much right on point. Lippert, Hall, and Ruflo. I'll deal with time factors. I'll deal with the whole concept of show-up identifications, why they're needed, they're necessary, what the parameters are, when they're proper. Okay. And when they're properly conducted near the scene of a crime, under circumstances where a prompt ID is necessary to determine if police have the suspect, have the right guy, or if they have to keep looking, then the show-up procedure is not unreasonably or is not conducive to misidentifications per se or as a matter of law. And one of the cases that really relied upon here is Ruflo because in that case, the ID was based on the color of the suspect's during the course of an armed robbery. Couldn't identify him facially, but all I could take and do was at the time of the show-up, identify the man as this is the guy, this is the guy that held me up, that took my money based on the color of the man's shorts he was wearing. So there's nothing really unusual about the fact of the royal blue hoodie that was worn in this case. The question here it gets down to is, again, when you assess the reliability as counsel has already pointed out, you look at five things. Witnesses opportunity to view the criminal at the time of the crime, their degree of attention, the accuracy of the prior description of the criminal, the level of certainty that's demonstrated at the confrontation and the length of time between the confrontation and the crime. Now, if you weigh all those factors in real time and practicality, as to what happened in this case, all five of these factors favor reliability. There's just no question. And the fact that the three witnesses from the school did not see his face, but was able to take and identify him. And I will take and say, not only just based on the royal blue sweatshirt, but I think also based upon the stature, also based upon what they actually saw. And if you look at their description of the events and how they detailed everything, I mean, they were very accurate. They were all very consistent and they all show a great degree of attention and reliability. I will take issue with counsel's statement concerning the fact that Hoover, after the show up, told police that she mentioned the wrong guy and only then basically realized about the royal blue sweatshirt. As I recall the record being in this case, Hoover did indeed, when she talked to 911 operator, did indicate that she thought that she named the shooter's newbie. Within 15 minutes after all that, she realized she had made a mistake. She went down, not at the behest of anybody, not being coerced or being spoken to about or any kind of pressure from anybody. She herself went down, went to the station. She didn't know, I don't think at that time that the individual was at the station, but she went there, even if she did, she still went there and she told the police on her own, I made a mistake. I erred. I named newbie. Newbie's not the person. The person that did this was the person by the name of Cameron. And she basically said that because she recalled and remembered at the time she was able to take and see these black her own mistake. And so in this particular case, I think that all of the factors that deal with respect to a show-up identification is proper. I think that there was absolutely no basis for the motion to suppress. And when we look at ineffective assistance, especially on a motion to suppress, to establish prejudice, there are two factors. One is the trial judge would have granted it. And secondly, the outcome of the trial would have been different. I think in this case, even if, even if we were to take and, and consider on the facts of this case, exactly what evidence, I think your honor had kind of indicated what other evidence did we have in this case, what would have been suppressed? If most of the suppress had been filed and if it'd been granted, then the witnesses would not have been able to say, I made a show-up identification. The detectives wouldn't have been able to say, we showed this individual under, by the way, under circumstances that Hall, Lippert, and Ruffalo, all similar circumstances, flanked by police, handcuffed, sitting in a police car. Okay. All found nonetheless to be proper show-ups. What would have been suppressed would have been that kind of testimony. What would have been admitted? Well, I still think that the three witnesses, Kuntz, Berg, and Prince could still have testified to what they saw. They could have testified that they saw an individual with the, with the royal blue hoodie. They could have testified. They seen this person with the royal blue hoodie, pull out a gun. They could say they didn't see the face. They didn't see the shooting, but they heard it. They could testify to everything. Police would be tied the defendant to any of that. They couldn't identify him in court. No, they still didn't even, even with, the show-up, they didn't identify him in court. Okay. So if they couldn't identify him in court, if the state was precluded from making the argument that they had identified him in the show-up, then there would have been no identification of him by those three witnesses. Is that right? I don't, I don't believe so because what would happen is they wouldn't, they wouldn't be able to testify strictly as your honor is asking, that I identified them. I saw him and that's who it is. But what they would do is circumstantially, they'd be able to say, I saw this person. I saw this person with the royal blue hoodie. Within, and then police could take and testify. Within 10 minutes, we see him walking where? Within two blocks of the shooting. See who? A person wearing a royal blue hoodie, right? At that point, the connection, circumstantial connection is made. They now find the gun, a gun on him. They now find, they connect the gun to the shooting. They testify to everything else. And then the same thing with Hoover. Hoover would still be able to testify as to what she saw, not necessarily what she identified or who she identified, but basically what she saw. Circumstantially, they could put all these pieces together. And of course, defendant would be able to take and say, oh, I was just happened to be in the neighborhood. I just happened to take and have the same royal blue hoodie that everybody else says that the shooter had. And you know what? I was just walking by and I see this gun laying in the ground that just so happens to be the weapon that murdered the individual. And I picked it up and I was carrying it innocently. That is what the evidence would more than likely be and what would have to be judged by the jury. And under the circumstances in this case, I think the circumstantial evidence is very strong, very strong enough on its own to establish that in this case, the verdict in this case, even if you keep out the identifications would not have been any different. And therefore the defendant in this case is unable to establish the prejudicial prong of Strickland, not only with respect to trial counsel and the motion to suppress, but also with respect to appellate counsel's decision not to take and raise any effective assistance of trial counsel because of the fact that I can't establish prejudice. And I would also go on to take and say, even though I know counsel didn't address this, even with respect to the second issue, with respect to the second paragraph of 3.11, again, defendant is unable to establish prejudice. Why? If you take a look at the Donlow case, the fourth district case, they basically have said that 3.11 in a case like this, this Hoover's testimony came out as substantive evidence. It came out in the state's case. It wasn't impeachment. So what the fourth district said is they said, 3.11 shouldn't have been given at all because 3.11 talks about, yeah, talks about impeachment. They've attached to that impeachment aspect, the whole concept from 115-10.1. But the whole thing is the trial judge already makes the determination under 115 about the admissibility. The trial judge makes the determination whether or not all those factors are present. Therefore, it finds it to be admissible. There's no issue for the jury to determine with respect to the use or admissibility or acceptability of that statement. It's already been made. They just got to consider the evidence. So under the facts of this case, defendant did not allege an arguable constitutional claim of ineffective assistance of appellate counsel at all. And therefore the people with respect to request that this court affirm the summary dismissal. If there are any other questions, I'll be more than happy to respond. Any further questions? Thank you, your honors. Thank you, counsel. Counsel Solstock, you may reply. Hope your, your audio's muted. If you can turn your audio up. There you go. Got it. Thank you. I will just start with the factual issue about when Hoover identified Newby. Now she did change her mind about whether it was Newby when she got to the police station. However, these physical descriptions and that she gave were not given prior to the show up. The blue hoodie did not, she didn't know anything about a blue hoodie until after she viewed Mr. Taylor in a show up. On the other hand, these three witnesses that the state says are very credible and gave a very coherent picture of what happened. These three witnesses at Aquinas School testified that the man was wearing a blue hoodie and his hood was up on his head the entire time. Meanwhile, Rebecca Hoover sees a man who she cannot remember if he's wearing what color, what he's wearing. She in fact said that to a detective prior to the show up that she did not know what the offender was wearing. She also didn't know what, even though she viewed this, this altercation, she didn't even know what her boyfriend was wearing. She testified that he was wearing a black shirt when in fact he was wearing a white shirt. So her accuracy of prior descriptions was just merely not present. There's no accurate description for us to compare to under the biggest factors. Prior to seeing, prior to seeing Taylor in the show up, her only description of the offender was his name is Newby. That was the only description she gave. That obviously doesn't match Cameron Taylor, who she then tells us is not Newby and a detective testified that Newby is in fact somebody else. So her only description prior to viewing the show up was shown to be completely wrong. She also was contradicted by these Aquinas witnesses who did testify consistently that the offender was wearing a blue sweatshirt with their hood up the entire time obstructing their face and presumably their hair. So it's really questionable how Ms. Taylor, Ms. Hoover thinks she could view the twists in the offender's hair until after she saw the show up. Looking at some of the other bigger factors that the state mentioned, in addition like the opportunity to view, I believe the Aquinas, at least one witness from Aquinas school testified that Hoover only popped out of that apartment building for three to four seconds. The entire altercation only took two to three minutes and Hoover was there for an hour. Thus her opportunity to view was for an extremely short period of time and she was also testified that she saw her boyfriend in a headlock and she was sought a firearm. These things can distract a person from viewing details such as a person's face or hairstyle or clothing, which is clearly what happened to Ms. Hoover who couldn't remember anybody's clothing in this incident. Additionally, as far as the cases that the state relied on, I believe I definitely responded to those in the reply brief, but I will just briefly respond to the state's argument about Ruffalo. That was not a case that was just about an item of clothing. In Ruffalo, although the witness said they were unable to identify the face of the defendant, he was able, the witness was able to provide a detailed description of the offender, including build, hair color, clothing, accent, and a very specific description of the make and model of the defendant's vehicle. That's a lot of things that the witness described, whereas here all we have is one blue generic hoodie. Big difference. I'll also point out that Ruffalo is quite an old case and the state seems to claim that identifying people based on one item of clothing is something that's very common. However, Ruffalo is the only case that the state cited that says we can have a reliable identification for one item of clothing and Ruffalo does not even say that because the facts are clearly distinguishable. The state has not provided any other case law that would support their contention that one item of clothing is a sufficient ID. Then I would just like to say as far as prejudice, it would have been an extremely different case had these identifications not come in. The state relied on these identifications and they definitely explained to the jury that four civilians identified Taylor as the offender. In closing argument, the prosecutor said, Sandy Coots, Dana Berg, and James Prince told you here in court that they were absolutely sure that that was the person that shot Nelson Williams Jr. That is a very, very loose depiction of what those witnesses testified in court. They testified they were sure a person in a blue hoodie shot the victim in this case. They were not sure that it was Mr. Taylor. They did not ID him in court and they didn't ID him during that unreliable show up. They only ID the sweatshirt. However, the state trotted these your time is up. Okay. Yeah. So yeah, there were six, there were six times that they heard these unreliable shops. And given all of these circumstances and the circumstances as a whole surrounding these identifications, they're all, they were extremely unreliable. And for these reasons, we would ask that this post conviction be remanded for second stage proceedings and the matter this afternoon, this matter will be taken under advisement and written disposition will issue. The clerk of our court will escort you out of our remote courtroom at this time, and we'll proceed to conference.